**NEHORA LAW FIRM, APC**
RICK J. NEHORA, SB# 277496
*rnehora@nehoralaw.com*
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
Telephone: 949.629.4349
Facsimile: 949.629.4469

Attorneys for Plaintiffs, S.S., a minor, by and through his Guardian *ad Litem* Eunjin Stern; Eunjin Stern, and William Stern

**NEHORA LAW FIRM, APC**
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

S.S., a minor, by and through his Guardian *ad Litem* Eunjin Stern; Eunjin Stern, an individual and William Stern, an individual,

Plaintiffs,

v.

Peloton Interactive, Inc. and DOES 1 through 50, inclusive,

Defendants.

CASE NO.: 3:21-cv-01367-BEN-DEB

**PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Pretrial Conference: April 3, 2023
Time: 10:30 a.m.
Courtroom: 2B

[Honorable Judge Roger T. Benitez]

Plaintiffs, Sidney Stern, a minor by and through his Guardian *ad Litem* Eunjin Stern (hereinafter "Sidney") and Eunjin Stern (hereinafter "Eunjin"), hereby respectfully proffer the instant Memorandum of Contentions of Fact and Law pursuant to SD CA Rule 16.1, subd. (f), as follows:

## I. <u>CONCISE STATEMENT OF MATERIAL FACTS</u>

### A. The Incident

Plaintiffs' lawsuit arises out of injuries Plaintiffs sustained when Sidney, a then three-year-old minor, was pulled under and trapped beneath a Peloton Tread+ Treadmill (hereinafter the "Treadmill"). Immediately prior to the incident Plaintiffs

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

complain of, Sidney's father, William Stern (hereinafter "William"), was exercising on the Treadmill. At that time, Sidney approached the Treadmill from behind his father, William, and was unexpectedly pulled and propelled under the 450 lbs. Treadmill, upon which his 150+ lbs. father was exercising. After hearing his toddler's terrorizing screams, William jumped off of the Treadmill and grabbed onto his son in an attempt to free Sidney. No matter how forcefully William pulled, Sidney continued to repeatedly be sucked under the Treadmill. When Sidney's pregnant mother, Eunjin, heard her boy shrieking her name and her husband's cries of desperation, she rushed to the room. William and Eunjin frantically attempted to extract their child from beneath the Treadmill as Sidney continued to cry in terror and screamed for help for what Eunjin recounts seemed like an endless amount of time. As both parents have tearfully and emotionally testified to, they both believed their child's life would come to an end. While both parents continued to physically pry the boy by his hands, arms, shoulders and torso in a complete panic, they were unable to successfully remove Sidney from the Treadmill's underbelly. William, using all the strength he could muster, shifted gears and instead attempted to lift the 450 lbs. Treadmill to save his son's life. After multiple failed attempts at lifting the heavy Treadmill, Eunjin finally pulled the Treadmill's power cord, which only very slowly caused the Treadmill to come to a halt, and allowed William to finally remove his son from the Treadmill's underbelly. To the parents' surprise and elation, their baby survived.

Sidney sustained contusions along his arms and shoulders as a result of the physical force his parents were required to exert onto the child by virtue of their efforts to pry him from the unruly Treadmill. Additionally, Sidney sustained contusions alongside his torso, stomach and ribs, as well as a laceration to his stomach and various burns due to the Treadmill's belt. Sidney continues to express an observable fear of and animus toward the Treadmill. Sidney's parents, however, have not been as lucky as Sidney. The parents' pain and suffering runs much deeper than physical scars and haunts them every day, changing the way they treat their three children,

each other and themselves. As the deposition testimony, expert opinions and the document production of Peloton Interactive, Inc. (hereinafter "Defendant") demonstrate, the Stern family's suffering could have and should have been prevented by Defendant. No parent should have to watch their child nearly die, particularly when Defendant could have easily resolved the Treadmill's known deficiencies and safety hazards.

**B. Parents' Injuries**

Eunjin and William sustained and continued to suffer from emotional trauma, anxiety, sadness, a sense of failure, feelings of regret and an extreme and increased attachment to their children due to the incident, as well as marital problems and trust issues within the marriage.

Eunjin and William have been diagnosed with post-traumatic stress disorder due to the incident, as well as problems with trust and intimacy with one another (formally diagnosed as relationship distress with spouse or intimate partner).

Eunjin's minimum level of care, which she is likely to exceed is as follows:

> Recommendation 1: It is recommended that Ms. Stern meet with a psychiatrist for medication treatment. The recommended frequency is 6 sessions for one year, followed by 2 sessions per year for the next 5-10 years. Medication options include but are not limited to a selective serotonin reuptake inhibitor such as paroxetine 20mg-60mg once per day for anxiety and PTSD symptoms, prazosin 5mg-10mg at night for nightmares, and/or an antihistamine such as hydroxyzine 25mg-50mg up to four times per day as needed for anxiety or insomnia.
>
> Recommendation 2: It is recommended that Ms. Stern meet with a therapist for individual cognitive behavioral or exposure based psychotherapy for PTSD. The recommended frequency is 12 sessions for one year, followed by 4 sessions per year for the next 5-10 years.
>
> Recommendation 3: It is recommended that Ms. Stern and her husband William Stern meet with a therapist for marital therapy. The recommended frequency is 24 sessions for one year, followed by 6 sessions per year for the next 5-10 years.

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

It should be noted that barriers to treatment include but are not limited to medication side effects and discomfort, cost and time associated with psychotherapy. These barriers can limit recovery from PTSD.

Additionally, William's minimum level of care, which he is likely to exceed is as follows:

Recommendation 1: It is recommended that Mr. Stern meet with a psychiatrist for medication treatment. The recommended frequency is 6 sessions for one year, followed by 2 sessions per year for the next 5-10 years. Medication options include but are not limited to a selective serotonin reuptake inhibitor such as sertraline 50mg-200mg once per day for PTSD symptoms, prazosin 5mg-10mg at night for nightmares, and/or an antihistamine such as hydroxyzine 25mg-50mg up to four times per day as needed for anxiety or insomnia.

Recommendation 2: It is recommended that Mr. Stern meet with a therapist for individual cognitive behavioral or exposure based psychotherapy for PTSD. The recommended frequency is 12 sessions for one year, followed by 4 sessions per year for the next 5-10 years.

Recommendation 3: It is recommended that Mr. Stern and his wife Eunjin Stern meet with a therapist for marital therapy. The recommended frequency is 24 sessions for one year, followed by 6 sessions per year for the next 5-10 years.

Recommendation 4: Mr. Stern will need ongoing treatment for psoriasis and psoriatic arthritis, which has worsened since the accident on 3/19/20. I defer to the appropriate physicians for details of such treatment.
It should be noted that barriers to treatment include but are not limited to medication side effects and discomfort, cost and time associated with psychotherapy. These barriers can limit recovery from PTSD.

**C. Minimum Cost of Future Care**

The minimum amount of Eunjin and William's future healthcare costs totals approximately $127,899.33, which does not account for the added cost of barriers to treatment such as additional therapy sessions, treating with other healthcare professionals and modifications to medication. This sum constitutes the bare minimum as it is based on the minimum recommended mental healthcare sessions and no changes to Eunjin and William's medications or healthcare providers.

/ / /

/ / /

/ / /

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

### D. Peloton Interactive, Inc.'s Knowledge of Hazards Posed to Children by the Tread+

Defendant, Peloton Interactive, Inc. (hereinafter "Defendant") had advance notice that the Tread+ posed safety hazards to children by way of "pull under" events such as the incident Plaintiffs' complain of. Defendant not only failed to notify the public of the hazards, Defendant also failed to notify the U.S. Consumer Product Safety Commission (hereinafter "CPSC") of the Tread+'s proclivity for injuring or killing children. Similarly, Defendant initially failed to issue a recall for the Tread+ (despite the government's eventual insistence that Defendant issue an immediate recall).

As of May 5, 2021, Defendant received approximately 335 incident reports, including 87 reports of injuries to consumers by virtue of the Tread+.

The CPSC charged Defendant with having knowingly failed to immediately report to the CPSC, as required by law, that its Tread+ contained a defect that could create a substantial product hazard and created an unreasonable risk of serious injury to consumers. The CPSC also found that Defendant knowingly distributed recalled treadmills in violation of the *Consumer Product Safety Act* (*CPSA*).

Notably, beginning in December 2018 and continuing into 2019, Defendant received reports of incidents associated with pull under and entrapment in the rear of the treadmills, including reports of injuries. Despite possessing this information, Defendant did not immediately report to the CPSC. By the time Defendant filed a report with the CPSC there were more than 150 reports of people, pets, and/or objects being pulled under the rear of the Tread+ treadmill, including the death of a child and 13 injuries, including broken bones, lacerations, abrasions and friction burns. Defendant eventually conceded to a recall of the Tread+ treadmill on May 5, 2021. Consequently, had Defendant notified the public or CPSC of the hazards, Defendant could have prevented the injuries to Plaintiffs in this case due to the subject incident, which occurred on March 19, 2020.

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

Defendant was charged and agreed to pay a civil penalty of $19,065,000 as a result of its wrongful conduct.

In the context of the instant action, Defendant continued its nefarious conduct and pattern of putting its profits ahead of consumer safety by producing an FRCP 30(b)6 deponent who testified that Defendant was only aware of three reports of/instances in which a Tread+ injured a child.

**E. Peloton Interactive, Inc. Marketed the Tread+ to Families and Consumers with Children and Represented the Tread+ as Being Safe For Use Around Children**

The Tread+ is sold directly to consumers by Defendant for $4,295 and is routinely sold with a payment plan offered by Defendant with automobile-like payment terms (*e.g.*, 43-month term). Defendant markets the Tread+ as appropriate for family use and routinely advertises the Tread+ with family-targeted and family-inclusive imagery, upon which the William and Eunjin Stern relied. One such advertisement, for instance, depicts a young girl exercising next to her mother and the Tread+. The young child shown in the marketing material is of nearly identical height, build and age of Sidney. Additionally, Defendant distributed viral video marketing depicting the use of Tread+ machines by parents around other family members including, specifically, children. Furthermore, Defendant disseminated, through social media, numerous photographs and videos of adult consumers who utilized the Tread+ machines alongside children as part of a further viral marketing campaign. In fact, Defendant's website provides that "[o]ne of the best things about Peloton is that it gives you the time, the strength, and the energy to focus on what's important—your family."

William and Eunjin specifically observed and relied on the representations by Defendant regarding the safety of the Treadmill, including that the Treadmill was safe for consumer use inside the home and alongside children.

/ / /

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

## II. <u>APPLICABLE LAW</u>

Plaintiffs assert causes of action for **(i)** Negligence, **(ii)** Negligent Infliction of Emotional Distress – Direct Victim, **(iii)** Negligent Infliction of Emotional Distress – Bystander, **(iv)** Intentional Misrepresentation, **(v)** Negligent Misrepresentation and **(vi)** Intentional Concealment. Plaintiffs also generally contend that Defendant breached the applicable standard of care that applies to a treadmill manufacturer and distributor. Further, Plaintiffs pray for an award of punitive damages, among other recoverable damages.

### A. Negligence

Negligence is either failing to do something a reasonably prudent person would have done or doing something a reasonably prudent person would not have done, under the circumstances, that causes injury to someone else. In California, "[e]veryone is responsible … for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person …" Civ.C. § 1714(a). In other words, "[a]ll persons are required to use ordinary care to prevent others being injured as a result of their conduct." *Rowland v. Christian* (1968) 69 C2d 108, 112, 70 CR 97, 100 (internal quotes omitted) (superseded by statute on other grounds as stated in *Calvillo-Silva v. Home Grocery* (1998) 19 C4th 714, 722-723, 80 CR2d 506, 513, fn. 7 (disapproved on other grounds as stated in *Aguilar v. Atlantic Richfield Co.* (2001) 25 C4th 826, 853, 107 CR2d 841, 864, fn. 19))]

The basic elements of a negligence claim are a *duty* on the part of defendant toward plaintiff; defendant's *breach* of that duty; and *harm* to plaintiff *caused by* the breach. *Kesner v. Sup.Ct. (Pneumo Abex, LLC)* (2016) 1 C5th 1132, 1142, 210 CR3d 283, 290.

#### i. Negligence *Per Se*

The failure of a person to exercise due care is presumed if he violated a statute, ordinance or regulation of a public entity. *California Evidence Code* Section 669; *Alarid v. Vanier*, 50 Cal.2d 617, 327 (1958).

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

The *Consumer Product Safety Act* prohibits against the import or distribution of consumer products that create a substantial product hazard or an unreasonable risk of serious injury or death. The *Act* also imposes reporting requirements such that a distributor report to the CPSC when a consumer product contains a defect that could create a substantial product hazard or create an unreasonable risk of serious injury or death. The *Consumer Product Safety Act* also makes it unlawful for any person to sell, offer for sale, manufacture for sale, distribute in commerce, or import into the United States, any consumer product that is subject to a voluntary corrective action taken by the manufacturer, in consultation with the CPSC, of which the CPSC has notified the public, or if the seller, distributor, or manufacturer knew, or should have known, of such voluntary corrective action. *Consumer Product Safety Act* Sections 19(a)(4), 15(b)(3) and (4), 19(a)(2)(B), 20(d).

**B. Negligent Infliction of Emotional Distress – Direct Victim**

Negligent Infliction of Emotional Distress (hereinafter "NIED") is a form of negligence. As such, "[t]he traditional elements of duty, breach of duty, causation, and damages apply." *Arista v. County of Riverside* (2018) 29 CA5th 1051, 1062-1063, 241 CR3d 437, 447 (internal quotes omitted).

To establish a claim for NIED, a plaintiff must prove:

1. That defendant was negligent;

2. That plaintiff suffered serious emotional distress; and

3. That defendant's negligence was a substantial factor in causing plaintiff's serious emotional distress.

Emotional distress includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame. Serious emotional distress exists if an ordinary, reasonable person would be unable to cope with it. *Judicial Council of California Civil Jury Instruction* 1620; *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 928.

/ / /

### C. Negligent Infliction of Emotional Distress – Bystander

Negligent Infliction of Emotional Distress – Bystander arises where a plaintiff claims that he suffered serious emotional distress as a result of perceiving an injury to another person/the victim. To establish a claim, plaintiff must demonstrate:

1. That defendant negligently caused injury to another person/the victim;

2. That when the accident that caused injury to the other person/victim occurred, plaintiff was present;

3. That plaintiff was then aware that the accident was causing injury to the victim/other person;

4. That plaintiff suffered serious emotional distress; and

5. That defendant's conduct was a substantial factor in causing plaintiff's serious emotional distress.

The plaintiff need not have been then aware that the defendant had caused the accident. Additionally, emotional distress includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame. Serious emotional distress exists if an ordinary, reasonable person would be unable to cope with it. *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 928 [167 Cal.Rptr. 831, 616 P.2d 813; *Judicial Council of California Civil Jury Instruction* 1621.

### D. Intentional Misrepresentation

Intentional Misrepresentation arises where a plaintiff claims that a defendant made a false representation that harmed him. To establish Intentional Misrepresentation, plaintiff must prove:

1. That defendant represented to plaintiff that a fact was true;

2. That defendant's representation was false;

3. That defendant knew that the representation was false when he made it, or that he made the representation recklessly and without regard for its truth;

4. That defendant intended that plaintiff rely on the representation;

5. That plaintiff reasonably relied on defendant's representation;

6. That plaintiff was harmed; and

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

7. That plaintiff's reliance on defendant's representation was a substantial factor in causing his harm.

*California Civil Code* Section 1710(1); *Judicial Council of California Civil Jury Instruction* 1900.

**E. Negligent Misrepresentation**

Negligent Misrepresentation consists of the assertion, as a fact, of something that is not true by one who lacks reasonable grounds for believing it to be true. *Civ.C. § 1710(2)*; *Bily v. Arthur Young & Co.* (1992) 3 C4th 370, 407, 11 CR2d 51, 74 Like fraud, negligent misrepresentation is statutorily defined as a form of deceit. It differs from fraud in that it lacks the element of scienter (knowledge of falsity). *Tenet Healthsystem Desert, Inc. v. Blue Cross of Calif.* (2016) 245 CA4th 821, 845, 199 CR3d 901, 921; *Charnay v. Cobert* (2006) 145 CA4th 170, 184, 51 CR3d 471, 482.

The elements of a claim for Negligent Misrepresentation are a misrepresentation of fact, lack of reasonable grounds, a duty to plaintiff, intent to induce reliance, reliance, causation and harm. *Majd v. Bank of America, N.A.* (2015) 243 CA4th 1293, 1307, 197 CR3d 151, 162-163; *National Union Fire Ins. Co. of Pittsburgh, Penn. v. Cambridge Integrated Services Group, Inc.* (2009) 171 CA4th 35, 50, 89 CR3d 473, 483; 5 *Witkin, Summary of California Law, Torts* § 891.

**F. Intentional Concealment**

Intentional Concealment arises where a plaintiff claims that he was harmed because a defendant concealed certain information. "[T]he elements of an action for fraud and deceit based on a concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Boschma v. Home Loan Center,*

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

*Inc.* (2011) 198 Cal.App.4th 230, 248; *Judicial Council of California Civil Jury Instructions* 1901.

**G. Punitive Damages**

The right to a punitive ("exemplary") damages award in California is strictly statutory. The authority is set forth in *Civ.C.* Section 3294, which provides:

> In an action for the breach of an obligation not arising from contract, where it is proven by *clear and convincing evidence* that the defendant has been guilty of *oppression*, *fraud or malice,* the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant. Civ.C. § 3294(a) (emphasis added); see CACI 3940-3942; BAJI 14.71, 14.72.1

Civ.C. § 3294 reflects a public policy determination that certain conduct—"oppression, fraud or malice"—is so reprehensible that a penalty should be exacted to deter the commission of similar wrongful acts. Thus, "punitive" or "exemplary" damages are awarded purely as punishment and "by way of example." *Nickerson v. Stonebridge Life Ins. Co.* (2016) 63 C4th 363, 371, 203 CR3d 23, 28; *PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 C4th 310, 317, 84 CR2d 455, 459; *People v. First Fed'l Credit Corp.* (2002) 104 CA4th 721, 732, 128 CR2d 542, 549.

## III. <u>ABANDONED ISSUES</u>

Plaintiffs have not abandoned any issues raised by the pleadings.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

## IV. PLAINTIFFS' EXHIBITS

S.S. v. Peloton Interactive, Inc.

3:21-cv-01367-BEN-DEB

List of Plaintiffs' Exhibits

| Number | Date Marked | Date Admitted | Description |
|---|---|---|---|
| | | | CPSC Warns Consumers" Stop Using the Peloton Tread+ dated April 17, 2021 |
| | | | Photograph of S.S. produced in the context of written discovery (filename IMG_1859.heic) |
| | | | Introduction Peloton Family Classes – Workout Classes for Family |
| | | | Marketing Material photograph (filename Marketing |

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

| | | | |
|---|---|---|---|
| | | | Material.jpeg) produced in the course of written discovery. |
| | | | CPSC and Peloton Announce Recall of Tread+ Treadmills After One Child Death and 70 Incidents; Recall of Tread Treadmills Due to Risk of Injury dated May 5, 2021 |
| | | | Peloton Agrees to Pay $19 Million Civil Penalty for Failure to Immediately Report Tread+ Treadmill Entrapment Hazards and for Distributing Recalled Treadmills dated January 5, 2023 |

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

| | | | |
|---|---|---|---|
| | | | Statement of Chair Alexander Hoehn-Saric on Vote to Approve $19.065M Settlement Agreement with Peloton Interactive, Inc dated January 5, 2023 |
| | | | Statement of Commissioner Peter A. Feldman on Peloton Settlement Agreement dated January 5, 2023 |
| | | | CPSC Secures $19.065 Million Penalty Against Peloton for Corporate Misconduct Surrounding Lethal Defect |

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

| | | | |
|---|---|---|---|
| | | | dated January 5, 2023 |
| | | | Commissioner Mary T. Boyle Statement on Peloton's Agreement to Pay Major Civil Penalty dated January 5, 2023 |
| | | | Peloton Tread+ Treadmill Safety Incident Video |
| | | | Remarks of Chair Alexander D. Hoehn-Saric International Consumer Product Health and Safety Organization (ICPHSO) 2023 Annual Symposium dated February 22, 2023 |
| | | | Settlement Agreement CPSC Docket No.: 23- |

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

| | | | |
|---|---|---|---|
| | | | C0001 *In the Matter of: Peloton Interactive, Inc.* |
| | | | Meeting Log – Directorate for Engineering Science dated May 12, 2021 |
| | | | April 26, 2021 Letter Re ASTM F2115-19 Standard Specification for Motorized Treadmills |
| | | | Meeting Log – Directorate for Engineering Sciences dated October 12, 2021 |
| | | | Statement of Acting Chairman Robert Adler on the Recall of the Peloton Tread + and Tread May 5, 2021 |

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

| | | | |
|---|---|---|---|
| | | | Dr. Scott Matthews' Report |
| | | | Dr. Laura Miele's Report |
| | | | Ms. Jan Roughan's Report |
| | | | Peloton Extends Full Refund for Consumers with the Recalled Tread+ Treadmill to November 6, 2023 |
| | | | CPSC FOIA Document Production |
| | | | Deposition Transcript of Betina Evancha and exhibits thereto |
| | | | PEL-STERN 013282 |
| | | | PEL-STERN 013599 |
| | | | PEL-STERN 033902 |
| | | | PEL-STERN 031797 |

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

| | | | |
|---|---|---|---|
| | | | PEL-STERN 031187-031188 |
| | | | PEL-STERN 031814-031818 |
| | | | PEL-STERN 031822 |
| | | | PEL-STERN 031839 |
| | | | PEL-STERN 031888-031907 |
| | | | PEL-STERN 031913-031915 |
| | | | PEL-STERN 032509-032510 |
| | | | PEL-STERN 033179 |
| | | | PEL-STERN 033245 |
| | | | PEL-STERN 033426-033433 |
| | | | PEL-STERN 033502-033504 |
| | | | PEL-STERN 033506-033510 |
| | | | PEL-STERN 033585 |
| | | | PEL-STERN 033691-033702 |
| | | | PEL-STERN 033792-033807 |
| | | | PEL-STERN 033840-033841 |
| | | | PEL-STERN 033847-033857 |
| | | | PEL-STERN 033879-033898 |
| | | | PEL-STERN 033881 |
| | | | PEL-STERN 033875 |

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

| | | | |
|---|---|---|---|
| | | | PEL-STERN 033906-033960 |

## V. WITNESSES

### A. Dr. Laura Miele – PO Box 1159, Roslyn, PA 19001 & 3959 Welsh Rd # 184, Willow Grove, PA 19090

Plaintiffs retained Dr. Laura Miele, PH D, CST-2. Dr. Miele holds a Doctorate in Psychology with an emphasis in Sports and Counseling, a Master of Arts in Education, Diverse Learner/Ed. Admin and a Bachelor of Science, Exercise Science: Physical Education. Dr. Miele is a Sports, Fitness and Recreation Consultant. Dr. Miele is expected to provide testimony regarding issues of safety and safety features pertaining to the Tread+ treadmill involved in the pending lawsuit. As such, Dr. Miele possesses the requisite expertise necessary to opine regarding Defendant's breach of the standard of care applicable to the fitness industry and consumer expectations relative to safety.

Dr. Laura Miele opines that Defendant failed to properly inform and warn the public regarding specific hazards of its Tread+, such as children, pets and objects potentially being pulled and trapped beneath the equipment. In so doing, Defendant violated the fitness industry's standard of care, created a dangerous condition, and increased the risk of emotional and physical injuries. Dr. Miele further opines that Defendant failed to properly instruct the public about its safe and proper uses. By failing to do so, Defendant created a dangerous condition, increasing the risk of emotional and physical injuries. Dr. Miele is also critical of Defendant's failure to implement a safeguard to prevent children from being pulled under the Tread+.

### B. Dr. Scott Matthews – 628 Santa Helena, Solana Beach, CA 92075

Plaintiffs retained Dr. Scott C. Matthews, M.D. as their medical expert in this case. Dr. Matthews is a licensed physician and is Board certified in Psychiatry. Dr. Matthews is expected to provide testimony regarding emotional injuries and trauma,

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

including the diagnoses and prognoses thereof, as well as medical care requirements. As a current Psychiatrist with the Veterans Affairs San Diego Healthcare System, Dr. Matthews possesses the requisite expertise necessary to opine regarding Eunjin and William's emotional injuries and the treatment thereof.

Dr. Matthews evaluated Eunjin and William. With respect to Eunjin, Dr. Matthews opines that **(i)** to a reasonable degree of medical certainty, Eunjin continues to suffer from PTSD related to the subject incident and **(ii)** to a reasonable degree of medical certainty, problems with trust and intimacy have developed between Eunjin and William as a result of the subject incident. As such, Dr. Matthews diagnosed Eunjin with PTSD and relationship distress with spouse or intimate partner. Dr. Matthews issued the following medical recommendations for Eunjin:

> Recommendation 1: It is recommended that Ms. Stern meet with a psychiatrist for medication treatment. The recommended frequency is 6 sessions for one year, followed by 2 sessions per year for the next 5-10 years. Medication options include but are not limited to a selective serotonin reuptake inhibitor such as paroxetine 20mg-60mg once per day for anxiety and PTSD symptoms, prazosin 5mg-10mg at night for nightmares, and/or an antihistamine such as hydroxyzine 25mg-50mg up to four times per day as needed for anxiety or insomnia.
>
> Recommendation 2: It is recommended that Ms. Stern meet with a therapist for individual cognitive behavioral or exposure based psychotherapy for PTSD. The recommended frequency is 12 sessions for one year, followed by 4 sessions per year for the next 5-10 years.
>
> Recommendation 3: It is recommended that Ms. Stern and her husband William Stern meet with a therapist for marital therapy. The recommended frequency is 24 sessions for one year, followed by 6 sessions per year for the next 5-10 years.

With respect to William, Dr. Matthews opines that **(i)** to a reasonable degree of medical certainty, William continues to suffer from PTSD related to the subject incident and **(ii)** to a reasonable degree of medical certainty, problems with intimacy have developed between Eunin and William as a result of the subject incident. As such, Dr. Matthews diagnosed William with PTSD and relationship distress with spouse or intimate partner. Dr. Matthews issued the following medical recommendations for William:

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

Recommendation 1: It is recommended that Mr. Stern meet with a psychiatrist for medication treatment. The recommended frequency is 6 sessions for one year, followed by 2 sessions per year for the next 5-10 years. Medication options include but are not limited to a selective serotonin reuptake inhibitor such as sertraline 50mg-200mg once per day for PTSD symptoms, prazosin 5mg-10mg at night for nightmares, and/or an antihistamine such as hydroxyzine 25mg-50mg up to four times per day as needed for anxiety or insomnia.

Recommendation 2: It is recommended that Mr. Stern meet with a therapist for individual cognitive behavioral or exposure based psychotherapy for PTSD. The recommended frequency is 12 sessions for one year, followed by 4 sessions per year for the next 5-10 years.

Recommendation 3: It is recommended that Mr. Stern and his wife Eunjin Stern meet with a therapist for marital therapy. The recommended frequency is 24 sessions for one year, followed by 6 sessions per year for the next 5-10 years.

Recommendation 4: Mr. Stern will need ongoing treatment for psoriasis and psoriatic arthritis, which has worsened since the accident on 3/19/20. I defer to the appropriate physicians for details of such treatment.

Dr. Mathews also notes as to both Eunjin and William that expected barriers to treatment include but are not limited to medication side effects and discomfort, as well as the cost and time associated with psychotherapy. These barriers can limit recovery from PTSD, thereby extending treatment timetables.

**C. Ms. Roughan – 465 N. Halstead St. Suite 120, Pasadena, CA 91107**

Plaintiffs retained Jan Roughan, BSN, PHN, RN, CRRN, CNLCP, CCP. Ms. Roughan is a Registered Nurse, as well as a Certified Public Health Nurse with the Board of Registered Nursing. Ms. Roughan is also a Certified Rehabilitation Registered Nurse. Ms. Roughan will opine regarding healthcare and lifecare needs, as well as issues pertaining to lifecare planning and the costs associated with healthcare and lifecare needs.

Ms. Roughan opines that the minimum (best case scenario) for Eunjin and William's medical care will cost at least $127,899.33, which does not account for the barriers of treatment noted by Dr. Matthews.

/ / /

/ / /

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

### D. CPSC Personnel

The CPSC personnel are prospective witnesses who may be called for the purpose of demonstrating Defendant's **(i)** notice/prior knowledge of the Tread+'s proclivity to injure children, **(ii)** knowledge of instances of injuries to children, **(iii)** the company's horrific attempts to hide the hazards (and failure to report the hazards and injuries) to the public and the CPSC and **(iv)** Defendant's continued attempts to hide its advanced knowledge of hazards posed to children by the Tread" and instances of injuries reported involving the Tread+. The witnesses include:

a. Richard L. Trumka Jr. at 4330 East-West Highway Bethesda, MD 20814, Tel. (800) 638-2772
b. Mary B. Murphy at 4330 East-West Highway Bethesda, MD 20814, Tel. (800) 638-2772
c. Leah Ippoloito at 4330 East-West Highway Bethesda, MD 20814, Tel. (800) 638-2772
d. Michael J. Rogal at 4330 East-West Highway Bethesda, MD 20814, Tel. (800) 638-2772
e. Jennifer Sultan at 4330 East-West Highway Bethesda, MD 20814, Tel. (800) 638-2772
f. Robert Kaye at 4330 East-West Highway Bethesda, MD 20814, Tel. (800) 638-2772
g. Melissa Hampshire at 4330 East-West Highway Bethesda, MD 20814, Tel. (800) 638-2772
h. Harriet Kerwin at 4330 East-West Highway Bethesda, MD 20814, Tel. (800) 638-2772
i. Alexander Hoehn-Saric at 4330 East-West Highway Bethesda, MD 20814, Tel. (800) 638-2772
j. Peter A. Feldman at 4330 East-West Highway Bethesda, MD 20814, Tel. (800) 638-2772

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

**E. Defendant's FRCP 30(b)(6) Deponent/Witness - 441 9th Avenue, New York, NY 1001**

Plaintiffs will call Defendant's FRCP 30(b)(6) witness/deponent who testified in the context of this action that Defendant was only aware of three instances involving pull-under accidents concerning the Tread+, which is untrue.

**F. Plaintiffs - 15862 Pomerol Lane, San Diego CA 92127.**

Eunjin Stern and William Stern will testify regarding the incident, including the impact it has had on them and their family. Eunjin and William are Sidney's biological parents, who have raised Sidney since birth and continue to do so in their San Diego home. Sidney's parents present well and are expected to similarly testify well before a San Diego jury. Eunjin and William testified that they were terrified by the subject incident (as any parent would be) and that it has had a lasting impact on them as parents, and created significant distrust in the marital relationship, thereby impacting their relationship and family in profound ways. In fact, the incident caused Sidney's parents to become *extremely* protective of their three young boys, refusing to leave them alone with any caretakers, including Sidney's grandparents or close friends, even for short periods. Both parents emotionally and tearfully testified that as parents, they felt helpless at the time of the subject incident and continue to feel like they failed their son, Sidney, who almost died. The parents also testified at length about their unhealthy but unavoidable attachment to their children, and the detrimental impact it has had on their family and marriage.

Sidney Stern will testify regarding the incident and impact it has had on him. Sidney is a five-year old boy who endearingly goes by the nickname "Eggie". Sidney is lovable and presents well. The boy who is, in large part, the subject of the instant lawsuit, is an adorable kindergartener who is versed in both Korean and English. Sidney is a soccer fanatic, who also enjoys watching Big City Greens, an animated comedy and adventure series produced by Disney, and relishes Bluey, an animated

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

Blue Heeler puppy "who is characterized by her abundance of energy, imagination and curiosity of the world."

Solomon Stern will testify regarding the incident involving his younger brother.

DATED: March 6, 2023 NEHORA LAW FIRM, APC

By: */s/ Rick J. Nehora*
Rick J. Nehora
Attorneys for Plaintiffs, S.S., a minor, by and through his Guardian *ad Litem* Eunjin Stern; Eunjin Stern, and William Stern

**NEHORA LAW FIRM, APC**
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

NEHORA LAW FIRM, APC
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
(949) 629-4349 • Fax. (949) 629-4469

**CERTIFICATE OF SERVICE**

*S.S., et al. v. Peloton Interactive, Inc., et al.*
United States District Court, Southern District Case No. 3:21-cv-01367-BEN-DEB

At the time of service, I was over 18 years of age and not a party to the action. My business address is 23 Corporate Plaza Dr., Suite 150, Newport Beach, CA 92660.

On March 6, 2023, I served the following document(s): PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

Kevin D. Smith
ksmith@wshblaw.com

Jade N. Tran
jtran@wshblaw.com

The documents were served by the following means:

[X] By electronic service via e-mail to the recipients referenced above.

[ ] Placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, on the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service, in a sealed envelope or package with the postage fully prepaid.

[ ] I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses referenced above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 6, 2023, at Newport Beach, California.

*/s/ Rick J. Nehora*
Rick J. Nehora