UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.S., a minor, by and through his Guardian ad Litem Eunjin Stern; EUNJIN STERN, an individual; WILLIAM STERN, an individual,, <br><br> Plaintiffs, <br><br> v. <br><br> PELOTON INTERACTIVE, INC., a Delaware corporation; DOES 1 through 50, inclusive, <br><br> Defendant. | Case No.: 3:21-cv-01367-BEN-MMP <br><br> **ORDER:** <br><br> **(1) DENYING-IN-PART DEFENDANT'S PRETRIAL BRIEF; and** <br><br> **(2) DENYING PLAINTIFFS' PRETRIAL BRIEF** <br><br> **[ECF Nos. 92, 93]** |

I.   **INTRODUCTION**

Plaintiff S.S., a minor, by and through his Guardian ad Litem Eunjin Stern ("S.S."); Eunjin Stern, an individual ("Mrs. Stern"); and William Stern, an individual ("Mr. Stern") (collectively, "Plaintiffs") bring this action against Defendant Peloton Interactive, Inc., a Delaware corporation ("Peloton") for injuries allegedly sustained in connection with Defendant's Tread+ treadmill (the "Tread+"). Before the Court are the parties' respective Briefs outlining various pretrial objections. *See* ECF Nos. 92, 93. The briefing was

submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure. ECF No. 102. After considering the papers submitted, supporting documentation, and applicable law, the Court: (1) **DENIES-IN-PART** Peloton's Pretrial Brief; and (2) **DENIES** Plaintiffs' Pretrial Brief.

## II.  BACKGROUND

### A.  Statement of Facts

According to the Complaint, around March 2020, while Mr. Stern was exercising on the Tread+, his three-year-old son, S.S., approached the rear of the machine without Mr. Stern's knowledge. ECF No. 1-2 ("Compl.") at 3, ¶ 1; 5, ¶ 10. S.S. was pulled under the 450-pound Tread+, with Mr. Stern's added body weight of 150 pounds. *Id.* As soon as Mr. Stern realized his child was stuck underneath the Tread+, he dismounted and attempted to remove him, but S.S. was repeatedly sucked back under the Tread+. *Id.* at 3, ¶ 1. Mrs. Stern came to help. *Id.* Both parents attempted to pull S.S. from underneath the Tread+ by his hands, shoulders, and torso, but they were unable to successfully remove him. *Id.* at 3, ¶ 2. Mr. Stern attempted to lift the Tread+ but this failed as well. *Id.* Mr. Stern was able to remove S.S. when Mrs. Stern triggered the Tread+'s ripcord, which caused the Tread+ to come to a halt. *Id.* at 3–4, ¶ 2. Plaintiffs allege that S.S. sustained injuries along his arms and shoulders, including but not limited to contusions along his torso, stomach, and ribs, as well as a laceration and permanent scarring to his stomach. *Id.* This is referred to as "the Incident" by the parties.

Around May 2021, Peloton issued a recall of its Tread+ Treadmills after the United States Consumer Product Safety Commission (the "CPSC") cautioned parents against the use of the machines due to the risk of injury and death. *Id.* at 4, ¶ 3. The CPSC learned of numerous other incidents of children being sucked beneath the treadmills. *Id.* Plaintiffs allege that Peloton "publicly confessed to the issues affecting its machines," concluding that it "should have engaged more productively with [the] [CPSC] from the outset." *Id.* Peloton added that it "made a mistake in [its] initial response to the" CPSC's request that the Tread+ be recalled. *Id.*

Plaintiffs further allege how Peloton "became the subject of an investigation by the CPSC." *Id.* at 8, ¶ 25. "On April 17, 2021, after investigating the death of at least one child and dozens of injuries like those sustained by [S.S.], the CPSC issued a warning to consumers, which [Peloton] initially refused to support." *Id.* "Specifically, the CPSC advised consumers to '[s]top using the Peloton Tread+ if there are small children or pets at home," and the "CPSC issued the warning because there is no safe way to use the Treadmill in a home where children are present." *Id.* Plaintiffs allege that initially, Peloton "rejected the CPSC's recommendation to stop using the Treadmill," calling the CPSC statement "inaccurate and misleading." *Id.* at 8, ¶ 26. Finally, Plaintiffs allege that Peloton made this "representation despite numerous documented injuries to minors, with the intent to encourage the ongoing use and purchase of the Treadmill despite its knowledge that the Treadmill could injure children." *Id.* at 8–9, ¶ 26.

### B. Procedural History

On May 7, 2021, Plaintiffs filed suit against Peloton in state court, alleging six causes of action for: (1) negligence; (2) negligent infliction of emotional distress by S.S. as a direct victim; (3) negligent infliction of emotional distress by Mr. and Mrs. Stern as bystanders; (4) intentional misrepresentation; (5) negligent misrepresentation; and (6) intentional concealment. *See* Compl. Defendant removed the case to this Court.

In August 2021, Peloton filed a Motion to Compel Arbitration, *see* ECF No. 11, which this Court granted-in-part, compelling Mr. Stern and Peloton to arbitration to determine the question of arbitrability—Mrs. Stern and S.S., however, are not bound by the arbitration agreement. *See generally* ECF No. 15. The parties engaged in discovery and on January 18, 2023, Peloton filed a Motion to Exclude Expert Testimony, *see* ECF No. 65, which this Court denied, *see* ECF No. 87.

After receiving the parties' proposed pretrial order and various objections to witness testimony and evidentiary exhibits, the Court ordered that the parties brief their objections. The parties filed Briefs concerning their respective objections, which are now before the Court. For all practical purposes, the Briefs seek to exclude certain evidence at trial. As

such, the Court applies the motion in limine standard in analyzing the various requests.

### III. LEGAL STANDARD

Rulings on motions in limine fall entirely within this Court's discretion. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce v. United States*, 469 U.S. 38, 41–42 (1984)). "Evidence is excluded on a motion in limine only if the evidence is clearly inadmissible for any purpose." *Mathis v. Milgard Manufacturing, Inc.*, No. 16-cv-2914-BEN-JLB, 2019 WL 482490, at *1 (S.D. Cal. Feb. 7, 2019) (*Fresenius Med. Care Holdings, Inc., v. Baxter Int'l, Inc.*, 2006 WL 1646113, at *3 (N.D. Cal. June 12, 2006)). "If evidence is not clearly inadmissible, evidentiary rulings should be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context." *See Mathis*, 2019 WL 482490, at *1 (citing *Bensimon*, 172 F.3d at 1127). "Denial of a motion in limine does not mean that the evidence contemplated by the motion will be admitted at trial. Instead, denial means that the court cannot, or should not, determine whether the evidence in question should be excluded before trial." *Mathis*, 2019 WL 482490, at *1 (citation omitted); *see also McSherry v. City of Long Beach*, 423 F.3d 1015, 1022 (9th Cir. 2005) (rulings on motions in limine are subject to change when trial unfolds).

### IV. DISCUSSION

Peloton's Pretrial Brief seeks to exclude at trial, Plaintiffs': (1) negligence per se theory; (2) testimony for of CPSC witnesses; (3) CPSC exhibits; and (4) S.S.'s direct victim claim of negligent infliction of emotional distress. ECF No. 93. Plaintiffs' Pretrial Brief seeks to exclude at trial the opinions of Peloton's expert Dr. Christopher Thompson. ECF No. 92. The Court rules on each request in turn.

#### A. Plaintiffs' Negligence Per Se Theory

Peloton contends that Plaintiffs' Memorandum of Facts and Law "set forth a new theory of negligence based upon negligence per se." ECF No. 93 at 3. Specifically, Peloton explains that Plaintiffs make new allegations that Peloton violated provisions of the Consumer Product Safety Act ("CPSA") in support of their negligence claim, identifying "10 witnesses from the" CPSC "and numerous documents authored by members of the

[CPSC] or submitted to the [CPSC]." *Id.* Peloton argues that Plaintiffs' pretrial disclosures alleged violations of various CPSA sections but Plaintiffs failed to provide fair notice of these negligence per se allegations. *Id.* at 4. First, Peloton contends that the Complaint makes no reference to the CPSA. *Id.* Second, Peloton argues Plaintiffs failed to "mention the CSPA in [] response to written discovery regarding their negligence contentions." *Id.* And third, Peloton argues the negligence per se theory was presented "months after the close of all discovery in their Memorandum of Facts and Law in March 2023." *Id.* Peloton concludes that "Courts have precluded plaintiffs from proceeding on claims of negligence per se when the plaintiff has failed to provide sufficient notice to support this theory, failed to amend the complaint to allege sufficient facts, and failed to provide any references in response to discovery, as is the case here." *Id.*

Plaintiffs argue that "negligence *per se* is an evidentiary device utilized in negligence actions, rather than a cause of action." ECF No. 97 at 4. Plaintiffs explain that the evidentiary presumption of the negligence per se doctrine "affects the standard of care in a cause of action for negligence." *Id.* (quoting *Turner v. Seterus, Inc.*, 27 Cal. App. 5th 516, 534 (2018)). Plaintiffs essentially argue that the CPSA statutory provisions may be adopted as the standard of care for their negligence claim but that negligence per se is not itself a cause of action. ECF No. 97 at 4.

Plaintiffs are correct that negligence per se serves as an evidentiary doctrine, and not its own cause of action. *See Harris v. Burlington N. Santa Fe R.R.*, No. ED CV-09197-ABC-JCX, 2013 WL 12122668, at *2–3 (C.D. Cal. July 12, 2013) (citing *Spencer v. DHI Mortg. Co., Ltd.*, 624 F.Supp.2d 1153, 1161–62 (E.D. Cal. 2009)). But "that negligence per se is not a cause of action does not relieve Plaintiff[s] of [] [their] burden to allege facts to support this theory." *Harris*, 2013 WL 12122668, at *3. As such, Plaintiffs must sufficiently plead the "elements" of their negligence per se theory, even when the theory falls within a general negligence claim. *See In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1296 (S.D. Cal. 2020) (explaining that "[i]n order to invoke negligence per se under California law, Plaintiffs must allege four essential

elements . . . ."). Those elements are codified in Rule 669(a) of the California Evidence Code as set forth below, explaining that a person's failure to exercise due dare is presumed where:

> (1) He violated a statute, ordinance, or regulation of a public entity;
>
> (2) The violation proximately caused death or injury to person or property;
>
> (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and
>
> (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

*See also Spencer*, 642 F. Supp. 2d at 1162 (quoting the same).

Here, Plaintiffs' Complaint fails to allege that Peloton violated a statute, ordinance, or regulation of a public entity. *See Harris*, 2013 WL 12122668, at *3 ("Plaintiff did not provide fair notice of the grounds for her claim for negligence, including identifying any statutory violations.") (internal quotation marks omitted). Although Plaintiffs made certain allegations discussing the CPSC—*e.g.*, that Peloton erred in responding to the CPSC's initial recall request—there is no mention of Peloton violating a particular statute, let alone any statute. *See* Compl. at 4, ¶ 3; 8, ¶ 25. And Plaintiffs have not sought leave to amend their Complaint. Even in Plaintiffs' Opposition to Peloton's Pretrial Brief at issue here, the Court finds no request to amend the Complaint. Accordingly, the Court **GRANTS** Peloton's request and **EXCLUDES** evidence specific to Plaintiffs' negligence per se theory.[1] *Cf. In re Solara Med. Supplies*, 613 F. Supp. 3d at 1296 (dismissing a negligence

---

[1] The Court notes that evidence related to Plaintiffs' negligence per se theory and general negligence theory may overlap significantly. Plaintiffs may of course, use admissible, overlapping evidence to support their general negligence theory, but the Court will not employ a statutory standard of care based on Plaintiffs' untimely negligence per allegations.

per se cause of action for failure to plead facts supporting the application of the negligence per se doctrine). Because the Court finds Plaintiffs did not plead allegations adequate to support a theory of negligence per se, the parties' remaining arguments are not addressed.

### B.    Whether CPSC Witnesses May Testify at Trial

Plaintiffs identified ten CPSC witnesses to testify at trial, and Peloton makes various arguments that they should be excluded. First, Peloton argues that "none of these witnesses have any personal knowledge regarding the Incident as the Incident was never reported or discussed beyond the Stern family." ECF No. 93 at 6. Peloton explains this renders any testimony from these witnesses irrelevant on liability and damages and should be excluded pursuant to Federal Rule of Evidence 401. *Id.* The Court finds Peloton's relevance argument unpersuasive.

Relevance is broad. Pursuant to Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Although the CPSC witnesses did not personally observe the Incident, as members of the Commission's investigation against Peloton, they may have personal knowledge respecting the Tread+ machine and the occurrence of similar events. In fact, Plaintiffs' intentional misrepresentation claim alleges that Peloton made false representations to the CPSC respecting the Tread+'s safety with respect to small children. Peloton allegedly takes the position that the Incident did not actually happen, or at least did not happen to the extent Plaintiffs' claim. Testimony of other similar incidents from CPSC witnesses could tend to make the fact of whether the Incident happened (and to what extent) more or less probable, which is clearly a fact of consequence in this action. Given the allegations in Plaintiffs' Complaint, and Peloton's counterarguments, the Court does not find CPSC witness testimony irrelevant.

Second, Peloton argues that Plaintiffs' disclosure of the ten CPSC witnesses is untimely. ECF No. 93 at 5. Peloton claims that none of the ten witnesses were "identified prior to the close of all discovery, and must be precluded from testifying." *Id.* Plaintiffs

counter that the "witnesses were not in existence or otherwise made public until after the discovery cutoff in this action and [Peloton] had knowledge of the private allegations, investigations and witnesses since May 5, 2021, which the documents released in 2023 by the CPSC demonstrate." ECF No. 97 at 3. The Court tends to agree with Plaintiffs on this point. The Complaint contains allegations involving the CPSC and its investigation into Peloton's Tread+. Furthermore, Plaintiffs do attach some discovery related to the CPSC recall at issue. ECF No. 97-1 at 15, 17, 18. In its Reply, Peloton reiterates the arguments addressed below, but does not provide additional argument regarding notice of the witnesses. ECF No. 99 at 3. Given the limited information provided, the Court will not preclude the witnesses for lack of notice at this time.

Finally, Peloton argues that under 16 C.F.R. § 1016.4(a), "[n]o Commission employee shall testify in his or her official capacity in any private litigation, without express authorization from the Commissioner's General Counsel . . . ." ECF No. 93 at 6. Peloton argues that it "has received no information that [CPSC] authorization has been requested of and granted by the Commission's General Counsel." *Id.* Finally, Peloton argues "there is no information provided with respect to where these witnesses from the Commission reside." *Id.* "To the extent that these witnesses reside in or near Bethesda, Maryland, where the Commission is headquartered, the distance is beyond the power of a subpoena issued in this District and these witnesses cannot be compelled to testify." *Id.* (citing Fed. R. Civ. P. 26).

Peloton is correct that Federal Regulations require Plaintiffs to obtain authorization from the CPSC's General Counsel for any CPSC employee to testify in this private litigation. *See* 16 C.F.R. § 1016.4(a) ("No Commission employee shall testify in his or her official capacity in any private litigation, without express authorization from the Commission's General Counsel. The Commission may, in its discretion, review a decision by the General Counsel to authorize such employee testimony. The General Counsel shall in such instances, where time permits, advise the Commission, on a no objection basis, of the authorization of such employee testimony."). Plaintiffs provide no response respecting

Peloton's § 1016.4 argument. As such, unless Plaintiffs have obtained the requisite permission, any testimony from CPSC witnesses will be excluded at trial pursuant to 16 C.F.R. § 1016.4(a).

With respect to subpoenas, 16 C.F.R. § 1016.4(b) states:

> If any Commission employee is served with a subpoena seeking testimony in private litigation, he or she must immediately notify the Office of the General Counsel. The Office of the General Counsel, in conjunction with the Department of Justice, will (1) take steps to quash the subpoena or (2) direct the employee to appear in response to the subpoena but refuse to testify on the ground that it is prohibited by this section.

Based on subsection (b), it appears the Office of General Counsel and the Department of Justice will handle subpoenas as they come in. As for the location of the witnesses, Plaintiffs do not respond to Peloton's argument and the Court will not speculate as to whether those witnesses are beyond the reach of subpoenas—there is currently no motion to quash any subpoena before this Court. Lastly, as noted above, per subsection (a), Plaintiffs need authorization from CPSC's General Counsel for any CPSC employee to testify in private litigation. To the extent the requisite authorization has not been obtained (the Court does not make a finding as to authorization at this time), the Court **GRANTS** Peloton's request to exclude Plaintiffs' CPSC witnesses from testifying.

### C. Whether CPSC Exhibits May Be Introduced at Trial

Peloton argues the majority of Plaintiffs' Exhibits identified in the Joint Pre-Trial Order "post-date the Incident, were never produced during discovery, post-date the fact and expert discovery cut-off, and/or may be considered subsequent remedial measures and therefore must be precluded pursuant to Fed. R. Evid. 401 and/or 407." ECF No. 93 at 6. Peloton contends that "Plaintiffs' Exhibits Nos. 27, 28, 29, 31, 26, 30, 25, and 24 also post-date the close of discovery in this action and were never produced." *Id.* "Exhibits 23A, 23AA, 40, 41, and 24 [supposedly] relate to Peloton's voluntary recall and if the Court determines that they are relevant to Plaintiffs' claims, they would nevertheless be precluded

from evidence via Fed. R. Evid. 407." *Id.* at 6–7. Peloton argues that "[d]ocuments created after the Incident are irrelevant to liability and damages," and that "[n]one of the documents are specific to the Incident, or involve an investigation of the Incident as Plaintiffs never reported the Incident to anyone, including Peloton." *Id.* at 7.

Peloton explains that it would be prejudicial to allow Plaintiffs to introduce evidence identified after the close of discovery, and that many of the post-discovery documents are hearsay and cannot establish Peloton's liability for an Incident that occurred three years prior. *Id.* Finally, Peloton argues that Plaintiffs "identified and produced Exhibit 36, which is ostensibly a copy of the Commission's response to a FOIA request, however only a placeholder exists with no actual documents produced. Peloton cannot determine at this late date what the documents are intended to be." *Id.* Peloton argues "[t]hey have never been produced and should be precluded." *Id.* Essentially, Peloton is arguing that the Exhibits are precluded by Federal Rules of Evidence Rule 401 (for lack of relevance), Rule 802 (inadmissible hearsay), and Rule 407 (subsequent remedial measures).[2]

Plaintiffs again counter that the documents "were not in existence or otherwise made public until after the discovery cutoff in this action and [Peloton] had knowledge of the private allegations, investigations and witnesses since May 5, 2021, which the documents released in 2023 by the CPSC demonstrate." ECF No. 97 at 3. Plaintiffs further argue that "CPSC findings and reports are admissible pursuant to Federal Rule of Evidence 803(8)," citing other cases that have admitted CPSC documents under the public records (and business records) exception to hearsay. ECF No. 97 at 5. Plaintiffs also contend Peloton "has maintained that the subject incident at issue in this action could not have happened, did not happen, that S.S.' injuries as disclosed could not have happened and that [Peloton] could not have and did [not] need to have taken precautionary measures to prevent the

---

[2] The Court notes Peloton's notice argument and again finds it unpersuasive. Plaintiffs' Complaint refers to the CPSC investigation, which Peloton was directly involved in. Although Plaintiffs should have served supplemental discovery, it seems that Peloton had access to the documents prior to Plaintiffs gaining access.

incident." *Id.* at 5–6. Plaintiffs argue that "[a]s such, the exceptions to Rule 407 allow Plaintiffs to proffer evidence of similar incidents, investigations into these incidents and the ease of which these incidents could have been prevented." *Id.* at 6.

As an initial matter, the Court notes that in its Order setting the briefing schedule, it asked the parties to attach "all testimony and exhibits at issue." ECF No. 88. The Exhibits were provided to the Court by Peloton. It seems that even if the Exhibits were not produced by Plaintiffs, Peloton would had access to them, given that Peloton was the focus of the CPSC proceedings and internal investigation at issue—though there appears to be at least one Exhibit that Peloton is lacking entirely.[3]

### 1. Relevance

As stated above, Federal Rule of Evidence 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Based on the information before the Court, it finds the Exhibits concerning the CPCS investigation of the Tread+ are relevant for the same reasons it finds the CPSC witness testimony relevant. *See supra* Part IV.B. The Exhibits primarily center on the Tread+ and, as alleged here, the investigation focused on pets and small children being pulled under. As such, the Court will not exclude the Exhibits for lack of relevance. *Cf. Gopher Media, LLC v. Spain*, No. 3:19-cv-02280-CAB-KSC, 2020 WL 12688143, at *7 (S.D. Cal. Aug. 24, 2020) (citing *Hampton v. City of San Diego*, 147 F.R.D. 227, 229 (S.D. Cal. 1993)) ("As noted, relevance is broad and not limited to the allegations in plaintiff's Complaint.").

### 2. Hearsay

Pursuant to Federal Rule of Evidence 802, hearsay is not admissible unless otherwise stated in: (1) a federal statute; (2) the Federal Rules of Evidence; or (3) other rules

---

[3] Plaintiffs' trial Exhibit 36 has apparently, not been produced. ECF No. 93 at 7.

prescribed by the Supreme Court. Plaintiffs cite the business records[4] and public records[5] exceptions to the rule against hearsay.

The Ninth Circuit has yet to address whether CPSC documents can be used in private litigation and little precedent on the subject exists. However, Plaintiffs rely on four cases, where CPSC documents have been allowed, three of which Peloton attempts to distinguish. First, in *United States v. Midwest Fireworks Manufacturing Co.*, 248 F.3d 563 (6th Cir. 2001), the CPSC exhibits involved fireworks, including sample collection and lab reports, a compliance assessment worksheet, and a letter of advice from the CPSC to the defendants. The Sixth Circuit affirmed the district judge admitting the documents under the public records exception to hearsay. *Id.* at 566–67. The Court explained that "[a]dmitting the records under the 803(8) exception is a practical necessity that must be afforded to government officers 'who have made in the course of their duties thousands of similar written hearsay statements concerning events coming within their jurisdictions.'" *Id.* (citation omitted). Peloton argues that here, the Sterns never reported the Incident to anyone outside of their immediate family, and that no evidence exists that the CPSC had specific information regarding the Incident. ECF No. 99 at 4. The Court is not persuaded.

---

[4] Federal Rule of Evidence 803(6) allows "[a] record of an act, event, condition, opinion, or diagnosis if: (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

[5] Federal Rule of Evidence 803(8) allows records or statements of a public office, if they set out: (1) the office's activities; (2) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or (3) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation. In addition, the opponent of the evidence "does not show that the source of information or other circumstances indicate a lack of trustworthiness."

The Court already found that evidence of similar incidents is at the very least, relevant to the case. Although the exact situation involving Plaintiffs may not be analyzed in the Exhibits at issue, it seems that similar situations of children being sucked under the Tread+ will be. Peloton does not argue the specifics of the hearsay rule or exceptions and as such, the Court does not delve into them.

Second, in *Morales v. American Honda Motor Co.*, 151 F.3d 500 (6th Cir. 1998), the Court found no error by the district court when it allowed "reference to CPSC published statistics on minibike-related injuries." *Id.* at 511. The defendants in *Morales* argued that "because none of the statistics were representative of accidents that occurred with the motorcycle in question in children nine to twelve years of age, and because the evidence was based upon unreliable data, it should have been excluded." *Id.* Peloton argues that here, "Plaintiffs are not attempting to introduce statistics and there is no expert that is relying on the documents to form an opinion." ECF No. 99 at 4. Peloton continues that "[u]pon examination, the documents Plaintiffs are attempting to introduce have no relevance to the case at hand." *Id.* The Court disagrees. First, Peloton makes no arguments specific to the Exhibits themselves for purposes of any analysis by this Court. Second, Peloton's argument regarding Plaintiffs' expert is set forth in Peloton's Reply Brief, meaning Plaintiffs have not had the opportunity to challenge it. Third, nothing in the *Morales* decision indicates that an expert's reliance is **required** to admit such a document. The Court does not know whether an expert intends to rely on the Exhibits, or how Plaintiffs plan to introduce them at trial. As such, the Court is unpersuaded by Peloton's application of *Morales*.

Finally, in *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1970), at issue was an investigative report in an action for deaths resulting from an airline crash. The parties disputed whether the crash was a result of pilot error or equipment malfunction, making the report relevant to causation. Peloton again argues that "[n]one of the documents Plaintiffs seek to introduce here are specific to the March 19, 2020 incident that gives rise to the instant action," and that no investigation occurred into to S.S.'s injuries. ECF No.

99 at 4. Peloton's argument is unconvincing. First, the Supreme Court in *Beech Aircraft* engaged in a much larger discussion of admitting fact/opinion evidence for purposes of Rule 803(8)(C), holding "that portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion." *Id.* at 162–70. Peloton does not argue how the Exhibits at issue here fall outside of the barriers of Rule 803(8)(C) set forth in *Beech Aircraft*, other than to say the Exhibits do not specifically analyze the Incident at issue. As explained above, because the CPSC investigation allegedly focused on small children being sucked under the Tread+—the precise scenario that Plaintiffs allege—the Court will not exclude all CPSC Exhibits outright. Again, there are no arguments applying the hearsay rules to the Exhibits at issue, limiting this Court's analysis. Accordingly, the Court will not exclude the CPSC Exhibits based on hearsay at this time.

### 3. Subsequent Remedial Measures

"Under [Federal] Rule [of Evidence] 407, a plaintiff may not introduce evidence of measures taken 'that would have made an earlier injury or harm less likely to occur' (*i.e.*, 'remedial actions') to prove negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction." *Maiorano v. Home Depot U.S.A., Inc.*, No. 3:16-cv-02862-BEN-MDD, 2018 WL 2128609, at *2 (S.D. Cal. May 9, 2018) (quoting Fed. R. Evid. 407). "However, 'the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.'" *Id*.

Contrary to Peloton's contention, the mere fact the documents post-date the accident does not mean they constitute subsequent remedial measures. Here, many of the Exhibits pertain to the CPSC investigation and not remedial measures, which are not subject be to exclusion under Rule 407. *See Est. of Nunez by & through Nunez v. Cnty. of San Diego*, No. 3:16-cv-01412-BEN-MDD, 2019 WL 2238655, at *3 (S.D. Cal. May 23, 2019) ("By its terms, [FRE 407] is limited to measures that would have made the harm less likely to occur; it does not extend to post-incident investigations into what *did* occur.") (citation

1  omitted). And Peloton's conclusory argument provides little information for the Court to
2  analyze. However, Peloton is correct that certain Exhibits state how Peloton was taking
3  measures to change the design of the Tread+ and improve safety. For example, Exhibits
4  23A and 23AA note that Peloton continued "to work on hardware modifications." Ex. C
5  to Declaration of Jade N. Tran, ECF No. 93-1 ("Tran Decl."). Exhibit 23 B further noted
6  that Peloton would "be making additional improvements in the coming weeks and months
7  to ensure the safety of their users . . . ." *Id.* Most specific was the statement in Exhibit 24,
8  stating how "Peloton is working on a rear guard that would address the hazard at the back
9  of the treadmill but no repair has been approved to date." *Id.*

10     Even so, Peloton also fails to respond to Plaintiffs' argument that exceptions to Rule
11  407 apply (*i.e.*, that the incident did not happen, could not have happened, and that Peloton
12  was not required to take precautionary measures). Although Plaintiffs fail to specify and
13  analyze those exceptions, it appears Plaintiffs are arguing that feasibility is in question.
14  Furthermore, Peloton similarly fails to point to the *specific* information to be excluded, nor
15  does it address whether it intends to make counterarguments that invoke feasibility. Given
16  the limited argument, the Court cannot say the Exhibits are inadmissible for any purpose.
17  Accordingly, the Court will not exclude the Exhibits at this time but will revisit the issue
18  the during the pretrial conference and/or in the context of trial.

19     **D.   Objection to S.S.'s Direct Victim Claim for Negligent Infliction of**
20          **Emotional Distress**

21     Peloton argues that Plaintiff S.S. cannot recover as a direct victim for his negligent
22  infliction of emotional distress claim. ECF No. 93 at 7–8. Peloton contends that the
23  California Supreme Court has allowed plaintiffs to recover damages as direct victims in
24  only three types of factual scenarios: (1) the negligent mishandling of corpses; (2) the
25  negligent misdiagnosis of a disease that could potentially harm another; and (3) the
26  negligent breach of a duty arising out of a preexisting relationship. *Id.* at 7–8. Peloton
27  argues that none of the above scenarios apply in this case, and that "S.S. would be entitled
28  to pursue emotional distress as part of his general negligence claim as he sustained

injuries." *Id.* at 8.

In response, Plaintiffs state that "it is unclear why Plaintiffs' negligent infliction of emotional distress cause of action is being addressed by [Peloton] in briefing concerning evidence and evidentiary objections." ECF No. 97 at 6. The Court agrees. Unlike Plaintiffs' negligence per se allegations discussed above, Plaintiffs' negligent infliction of emotional distress claim (by S.S. as a direct victim) is clearly alleged in the Complaint. Peloton could have filed a motion to dismiss or motion for summary judgment seeking dismissal of the claim as a matter of law. No such motions were filed. Accordingly, the Court will not address the issue here.

### E. Plaintiffs' Pretrial Objection that Dr. Thompson's Opinions Are Duplicative, Lack Foundation, and Are Not Based on Personal Knowledge

Plaintiffs note that Peloton "designated two medical experts, Dr. Christopher Thompson, M.D. and Dr. Matthew F. Carroll, M.D.," and that both are psychiatrists. ECF No. 92-1 at 3. Plaintiffs claim that Peloton "initially designated Dr. Thompson, but was unable to coordinate Independent Medical Examinations due to Dr. Thompson's unavailability and scheduling constraints." *Id.* Plaintiffs argue that Dr. Thompson's testimony would be "superfluous, redundant, duplicative" and would "increase the length of trial . . . unnecessarily." *Id.* Plaintiffs make this objection pursuant to Federal Rule of Evidence 403.

In addition to being cumulative, Plaintiffs argue that Dr. Thompson lacks "the requisite personal knowledge necessary to provide any opinions," and that "his reports similarly lack foundation." *Id.* at 5. Plaintiffs contend that Dr. Thompson took no "examinations in the context of this action," and that "his testimony is not based on sufficient facts or data," contrary to Federal Rule of Evidence 702(b). Plaintiffs argue that "[m]uch like a witness who lacks personal knowledge under Federal Rule of Evidence 602, Dr. Thompson's testimony and reports should be excluded." *Id.* at 5. Plaintiffs attach each expert's report to their Brief but fail to cite to the reports or explain how the testimony is

duplicative. Nevertheless, the Court reviewed the opinions of Peloton's respective experts.

Although some overlap between Dr. Thompson's and Dr. Carroll's reports exists, their opinions focus on different aspects of the case. For example, both reports focus on Mrs. Stern's mental health as it relates to the alleged Incident. However, Dr. Carroll's inquiry appears to center on whether Mrs. Stern suffers from PTSD. Dr. Carroll also provides opinions as to the necessary causes of Mrs. Stern's evaluation, as well as the treatment employed. Conversely, Dr. Thompson's report focuses on Dr. Matthews' evaluation of Mrs. Stern—including how that evaluation was limited—as well as how Dr. Matthews' treatments were excessive. Dr. Thompson further reviewed Ms. Roughan's cost analysis of Mrs. Stern's future mental health care, concluding the costs were overestimated. The Court notes some overlap respecting the appropriate treatment for Mrs. Stern but as a whole, determines the reports are quite different with respect to the ultimate opinions and evaluation of information. Finding the reports independently formed and distinct, the Court need not exclude Dr. Thompon's report simply because certain opinions overlap with those of Dr. Carroll. *See Stone Brewing Co., LLC v. MillerCoors LLC*, No. 3:18-cv-00331-BEN-LL, 2020 WL 907060, at *13 (S.D. Cal. Feb. 25, 2020) ("The Court finds that even if there are minor points of overlap between Poret and Stec's survey's, each was independently formed and is distinct from the other. Moreover, each offers a relevant and reliable counter analysis of Stewart's likelihood of confusion survey analysis, which is a critical issue in this case. Thus, the motion is DENIED on this point."). Plaintiffs may object at trial should the testimony become overly duplicative.

As to foundation and personal knowledge, Dr. Thompson's report states that he did not conduct an in-person interview of Mrs. Stern and therefore, his "opinions are based on review of the available records (including the reports of other evaluators/experts), [his] education, training, and experience, and [his] knowledge of the existing scientific literature." ECF No. 92-2 at 147. Rule 702 of the Federal Rules of Evidence set forth the following requirements to establish admissibility of expert opinion evidence: (1) the witness must be sufficiently "qualified as an expert by knowledge, skill, experience,

training, or education;" (2) the scientific, technical, or other specialized knowledge must assist the trier of fact" either "to understand the evidence" or "to determine a fact in issue;" (3) the testimony must be "based on sufficient facts and data;" (4) the testimony must be "the product of reliable principles and methods;" and (5) the expert must reliably apply the principles and methods to the facts of the case. "District courts have broad discretion under Rule 702 . . . . concerning the admissibility of expert testimony." *Shore v. Mohave Cnty., State of Ariz.*, 644 F.2d 1320, 1322 (9th Cir. 1981) (citations omitted).

When evaluating expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564 (citation omitted). The district judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969–70. "When an expert meets the threshold established by Rule 702 as explained by the Supreme Court in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Primiano*, 598 F.3d at 565. "Trial courts have 'broad discretion' in this analysis," *see Mathis*, 2019 WL 482490, at *1 (quoting *United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000), and the tests for admissibility in general, and reliability, are flexible. *Primiano*, 598 F.3d at 564.

Although Dr. Thompson did not perform a scientific test, his opinions appear to be based on his experience and knowledge in the industry and his understanding of psychiatric medicine and the scientific literature. Whether Dr. Thompson's testimony/opinions are correct is not for the Court to decide. *See Stone Brewing*, 2020 WL 907060, at *2 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995))

-18-

("[T]he test under *Daubert* is not the correctness of [experts'] conclusions but the soundness of [their] methodology."). Plaintiffs do not state the test for expert testimony, let alone make any arguments respecting the requirements. Plaintiffs likewise do not attack Dr. Thompson's methodology other than to argue that Dr. Thompson did not interview Mrs. Stern. But Dr. Thompson's opinions assess evaluations performed by others.

Given the limited argument provided by Plaintiffs, the Court exercises its broad discretion under Rule 702 and declines to exclude Dr. Thompson's testimony. *See Leeds LP v. United States*, No. 08-cv-00100-BTM-BLM, 2010 WL 3911429, at *2 (S.D. Cal. Oct. 5, 2010) (citing *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) ("[T]rial judges are entitled to broad discretion in determining both whether an expert's non-scientific testimony is reliable and how to measure reliability.")). The Court does note, however, that its finding provides no opinion as to the strength or credibility that should be afforded to Dr. Thompson's opinions. Those questions are for the jury, and the Court may, of course, respond to any objections made during trial. Furthermore, as always, Peloton must lay the proper foundation for Dr. Thompson's testimony. Disputes surrounding foundation and personally knowledge will be resolved in context, at trial. *See Mathis*, 2019 WL 482490, at *1. Accordingly, Plaintiffs' Pretrial Brief requesting exclusion of Dr. Thompson's testimony and report is **DENIED**.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Court **GRANTS** Peloton's request to exclude Plaintiffs' negligence per se theory for failure to adequately plead that theory in their Complaint.

2. To the extent Plaintiffs have not obtained the requisite authorization for CPSC witnesses to testify, the Court **GRANTS** Peloton's request to exclude these witnesses pursuant to 16 C.F.R. § 1016.4(a).

3. The Court **DENIES** Peloton's request to outright exclude the CPSC Exhibits at issue. However, those Exhibits discussing subsequent remedial measures will be excluded if no exception is invoked. As to Exhibit 36, Plaintiffs must produce this

document no later than **November 3, 2023**, and the Court will consider its admissibility at the pretrial conference.

    4.    The Court **DENIES** Peloton's request to dismiss S.S.'s direct victim negligent infliction of emotional distress claim.

    5.    The Court **DENIES** Plaintiffs' request to exclude Dr. Thompson's expert report and testimony.

**IT IS SO ORDERED.**

DATED: October 27, 2023

_____
HON. ROGER T. BENITEZ
United States District Judge